IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUMBERMENS MUTUAL CASUALTY COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-3490 |
| | : | |
| ERIE INSURANCE COMPANY, et al. | : | |

**MEMORANDUM**

Ludwig, J.                                                                         October 4, 2007

      This action is filed under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Jurisdiction is diversity. 28 U.S.C. § 1332. Plaintiff Lumbermens Mutual Insurance Company moves for summary judgment to obtain a declaration that it has no obligation to defend or indemnify its insured, Czop/Specter, Inc., in a state court negligence action, but that defendant, Erie Insurance Exchange,[1] which also insures Czop, is required to do so. Erie has filed a cross-motion. Summary judgment will be granted in favor of Erie and against Lumbermens[2]. This memorandum follows the order of September 28, 2007.

      The following relevant facts are undisputed:[3]

---

[1] Erie is incorrectly identified as "Erie Insurance Company" in the caption.

[2] "Summary judgment is appropriate only where, drawing all inferences in favor of the non-moving party, there is no genuine issue as to any material fact and that [sic] the moving party is entitled to judgment as a matter of law." Ruehl v. Viacom, Inc., – F.3d –, –, 2007 WL 2555244, at *2 n.6 (3d Cir., filed Sept. 7, 2007), quoting Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005).

[3] The facts are drawn from the pleading, including all attachments, responses to written discovery requests, and the deposition testimony and affidavits of key representatives of Lumbermens and Erie, and of the parties to the underlying action.

On August 12, 2000, Donald Cuthbertson, Jr. was injured in an auto accident in Bucks County, Pennsylvania when a driver violated a stop sign and collided with the car in which Cuthbertson was a passenger.  Complaint, ¶ 8.  His negligence claim was filed in the Court of Common Pleas of Bucks County Cuthbertson v. Commonwealth of Pennsylvania, et al., CP Bucks, No. 2000307-20-2.  The amended complaint in the Cuthbertson action alleged that the accident occurred because the driver did not see "an obscured and otherwise difficult to observe stop sign . . . due to a combination of factors, including tree branches, vegetation, bushes, brush and grass which obstructed visibility of eastbound drivers west of the stop sign."  Cuthbertson amended complaint, ¶¶ 9, 11.  It asserts a claim against Czop/Specter, Inc., alleging that Czop was negligent in the performance of its contract with PennDoT.  Id., ¶¶ 34-38.  Under the contract, Czop performed inspection services for PennDot and scheduled any work necessitated by the discovery of hazardous road conditions resulting from overgrown vegetation.  Id.; "Engineering Agreement."[4]  The inspection and scheduling services were performed by Czop's employee, David Riley.

Lumbermens provided a defense to Czop under the terms of an Architects and Engineers Professional Liability Policy, policy no. QL0163515-00, subject to a reservation of rights.  The Lumbermens policy contains coverage for claims "arising out of a wrongful

---

[4] The "Project Description" included in the Engineering Agreement is as follows: "This project consists of inspection of guiderails and replacements, inspection of work that is done by permit along state routes, inspection of work done by roadside development contractors and inspection of work done under various general maintenance contracts with the County." Engineering Contract, Exhibit "C" to Erie's motion.

act in the performance of 'professional services.'" Professional services are defined as "those services that the insured is legally qualified to perform for others in the insured's capacity as an architect, engineer, land surveyor, landscape architect, construction manager or as defined by endorsement to the policy." Lumbermens policy. Lumbermens' position is that it has no obligation to defend or indemnify Czop in the Cuthbertson action because the claim asserted against Czop is for vicarious liability for the ordinary negligence of Czop's employee, Riley, and is not a claim arising from "professional services" as that term is defined in the Lumbermens policy. Complaint, ¶¶ 21, 22.

Lumbermens tendered Czop's defense to Erie. Erie insures Czop under a General Liability Policy. That policy contains an endorsement excluding from coverage "damages due to any services of a professional nature, including but not limited to: . . .supervisory, inspection, or engineering services." Erie policy, Exclusions, 7.e. Erie urges that the services performed by Czop through Riley constituted supervisory and inspection services and, therefore, the claim is excluded from coverage under the Erie policy.

The issue is whether Riley's services under the Engineering Agreement were "services of a professional nature".[5] Under the evidence, they were - as the job entailed Riley's

---

[5] "A 'professional' act or service isone arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself." Harad v. Aetna Casualty, 839 F.2d 979, 984 (3d Cir. 1988) (no coverage for liability arising from signing and filing an answer and counterclaim on behalf of a client, where policy excluded from coverage liability arising from the 'rendering . . . of any professional service'). See also Continental Cas. Co. v. Hartford

inspection and supervisory services, which could not have been performed by almost "anyone," as Lumbermens contends, and which are expressly excluded from coverage under the Erie policy.

The Engineering Agreement required Czop to submit Riley's credentials for approval by PennDoT for the position of "Roadside Development Consultant,"[6] Engineering Contract, at 42, which it did. Deposition of Arthur Boesler, at 22. After his credentials were approved, Riley was trained by Kevin Munley of PennDoT. The training included mandatory seminars that prioritized needed work and roadside vegetation control. Deposition of Kevin Munley, at 38-54. They also gave Riley a familiarity with PennDoT's traffic control publications, which determined how he handled a particular roadside safety issue. Riley deposition, at 29-38. Upon completing his training, Riley conducted inspections in order to identify hazards; scheduled roadside work to be performed by others in accordance with PennDoT's standards; and supervised the contractors performing the work. Munley Deposition, at 15, 21, 16-18, 25, 29-35. It is undisputed that Riley could not have performed the job without the specialized training he received from PennDoT. Riley deposition, at 29-38; Munley deposition, at 67.

---

Acc. & Indem. Co., 846 F. Supp. 31, 31 (E.D. Pa. 1994), citing P.L.E. Insurance § 422 (where "expertise was material to the risk and consequent injury," under generally accepted principals of insurance law exclusion for professional services would be applicable).

[6] In this regard, it is conceded that Riley did not hold an engineering degree, albeit Czop is an engineering firm. He did, however, have specialized herbicide training, which he utilized in connection with his inspection responsibilities under the Engineering Agreement. Deposition of David Riley, at 16-20.

"One does not have to be a doctor or a lawyer to render professional services. . . . General liability coverage would include someone slipping and falling in [the insured's] offices, <u>but not the job that [the insured] got paid for doing</u>." <u>Atlantic Mut. Ins. Co. v. Gula</u>, 926 A.2d 449, 450 (Pa. Super. 2007) (emphasis added).  Here, the job that Czop was paid for was the inspection and supervisory services performed by Riley.  Those services followed extensive training of Riley by PennDot.  His failure, if any, to inspect and supervise the trimming of the vegetation that obscured the stop sign referred to in the <u>Cuthbertson</u> action, constituted a "wrongful act in the performance of professional services" as that term is defined in the Lumbermens policy.  Further, the services were precisely the services excluded from coverage under the Erie policy.

Accordingly, judgment has been entered in favor of Erie and against Lumbermens.


                                            BY THE COURT:


                                             /s/ Edmund V. Ludwig_____
                                            Edmund V. Ludwig, J.